## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| JESSICA MOORE, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:23-cv-1550 |
| IC SYSTEM, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CAINE & WEINER COMPANY, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Jessica Moore, by and through the undersigned counsel, and for her Complaint against Defendants IC System, Inc. ("ICS"), Caine & Weiner Company, Inc. ("CWC"), Experian Information Solutions, Inc. ("EXP"), and Trans Union, LLC ("TU"), (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

### JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

1

2.      Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and ICS, CWC, EXP, and TU, transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Bastrop, a part of Bastrop County, Texas 78602.

6.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Bastrop, a part of Bastrop County, Texas 78602, making the Austin Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.      Defendant ICS, a Minnesota corporation headquartered in Saint Paul, MN, practices as a debt collector throughout the country, including Texas.

8.      Defendant CWC, a California corporation headquartered in Sherman Oaks, CA, practices as a debt collector throughout the country, including Texas.

9.      Defendants ICS and CWC attempt to collect alleged debts throughout the state of Texas, including in Bastrop city and Bastrop County.

10.      Defendants ICS and CWC have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

11.      Defendants ICS and CWC have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Bastrop city and Bastrop County and Defendants attempt to collect alleged debts throughout the state of Texas.

12.    Defendants ICS and CWC knowingly attempted to collect on debts allegedly incurred in Bastrop, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

13.    Defendant EXP, a California corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

14.    Defendant EXP serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Bastrop city and Bastrop County.

15.    Defendant EXP has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EXP purposefully availed itself to the jurisdiction in which Plaintiff resided.

16.    Defendant EXP has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Bastrop city and Bastrop County and Defendant attempts to collect alleged debts throughout the state of Texas.

17.    Defendant EXP knowingly reported information regarding a Plaintiff domiciled in Bastrop, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

18.    Defendant TU, a Delaware corporation headquartered in Chicago, IL, practices as a debt collector throughout the country, including Texas.

19.    Defendant TU serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Bastrop city and Bastrop County.

20.    Defendant TU has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TU purposefully availed itself to the jurisdiction in which Plaintiff resided.

21.    Defendant TU has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Bastrop city and Bastrop County and Defendant attempts to collect alleged debts throughout the state of Texas.

22.    Defendant TU knowingly reported information regarding a Plaintiff domiciled in Bastrop, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

23.    Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

24.    ICS and CWC's collection activities violated the FDCPA.

25.    Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

26.    Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

27.    "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently

concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

28.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## PARTIES

29.     Plaintiff, Jessica Moore (hereafter "Plaintiff"), is a natural person currently residing in Bastrop County, in the state of Texas.

30.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

31.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

32.     Defendant ICS is a Minnesota corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 444 Highway 96 E, Saint Paul, MN 55127.

33.     Defendant CWC is a California corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 5805 Sepulveda Blvd, Fl. 4, Sherman Oaks, CA 91411.

34.     ICS and CWC are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

35.     ICS and CWC regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

36.     Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

37.     Defendant TU is a Delaware corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

38.     Defendants ICS and CWC are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

39.     EXP and TU, are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EXP and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

40.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than ICS and CWC.

41.      On a date better known by ICS, ICS began to attempt to collect an alleged consumer debt from the Plaintiff.

42.     The alleged debt was said to be owed to Monarch Utilities.

43.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

44.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

45.     The reporting of the alleged debt contains an inaccurate balance.

46.     The reporting of the alleged debt contains an inaccurate status.

47.     The reporting of the alleged debt contains inaccurate delinquency information.

48.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

49.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

50.     That ICS was reporting the collection account on Plaintiff's credit report with EXP and TU.

51.     That ICS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

52.     ICS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

53.     On or about 11/14/2023, Plaintiff sent dispute letters to EXP and TU notifying the account with ICS as disputed. **Exhibit A and Exhibit B.**

54.     These letters provided notice of the inaccurate reporting to EXP and TU.

55.     Once EXP and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case ICS.

56.      EXP and TU received the letters sent by Plaintiff.

57.      EXP and TU transmitted notice of these disputes to ICS via an Automated Credit Dispute Verification form ("ACDV").

58.     ICS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

59.     Alternatively, EXP and TU failed to send notice of the disputes to ICS after receiving notice of the disputes from Plaintiff.

60.     After receiving this notice, in any subsequent voluntary reporting, ICS must then include the dispute notation on said account.

61.     On or about 01/16/2023, Plaintiff received an updated credit file from EXP. **Exhibit C.**

62.     That the credit report was updated on 01/15/2023 by ICS.

63.     That the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to ICS.

64.     Alternatively, that the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify ICS.

65.     On or about 01/16/2023, Plaintiff received an updated credit file from TU. **Exhibit C.**

66.     That the credit report was updated on 01/08/2023 by ICS.

67.     That the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to ICS.

68.     Alternatively, that the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify ICS.

69.     That the updated 01/16/2023 credit report did not contain updated marked as disputed information.

70.      The updated 01/16/2023 credit report contained inaccurate information.

71.     ICS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

72.     ICS must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and TU.

73.    That ICS furnished information to EXP and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and TU of the disputes.

74.    That ICS failed to update the account information and mark the account as disputed on the updated 01/16/2023 credit report after Plaintiff disputed the account on 11/14/2023 and was given notice of such by EXP and TU.

75.    In the alternative, if ICS properly updated the account information and marked the account as disputed with EXP and TU after receiving notification of disputes from Plaintiff, then EXP and TU failed to update the account information and mark the account as disputed on the updated 01/16/2023 credit report.

76.    That ICS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and TU.

77.    Alternatively, EXP and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from ICS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

78.    On a date better known by CWC, CWC began to attempt to collect an alleged consumer debt from the Plaintiff.

79.    The alleged debt was said to be owed to Progressive.

80.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

81.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

82.    The reporting of the alleged debt contains an inaccurate balance.

83.    The reporting of the alleged debt contains an inaccurate status.

84.     The reporting of the alleged debt contains inaccurate delinquency information.

85.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

86.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

87.     That CWC was reporting the collection account on Plaintiff's credit report with EXP and TU.

88.     That CWC was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

89.     CWC's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

90.     On or about 11/14/2023, Plaintiff sent dispute letters to EXP and TU notifying the account with CWC as disputed. **Exhibit A and Exhibit B.**

91.     These letters provided notice of the inaccurate reporting toEXP and TU.

92.     Once EXP and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CWC.

93.      EXP and TU received the letters sent by Plaintiff.

94.      EXP and TU transmitted notice of these disputes to CWC via an Automated Credit Dispute Verification form ("ACDV").

95.     CWC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

96.     Alternatively, EXP and TU failed to send notice of the disputes to CWC after receiving notice of the disputes from Plaintiff.

97.     After receiving this notice, in any subsequent voluntary reporting, CWC must then include the dispute notation on said account.

98.     On or about 01/16/2023, Plaintiff received an updated credit file from EXP. **Exhibit C.**

99.     That the credit report was updated on 12/24/2023 by CWC.

100.    That the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CWC.

101.    Alternatively, that the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CWC.

102.    On or about 01/16/2023, Plaintiff received an updated credit file from TU. **Exhibit C.**

103.    That the credit report was updated on 12/24/2023 by CWC.

104.    That the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to CWC.

105.    Alternatively, that the updated 01/16/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify CWC.

106.    That the updated 01/16/2023 credit report did not contain updated marked as disputed information.

107.    That the updated 01/16/2023 credit report contained inaccurate information.

108.    CWC failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

109.    CWC must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and TU.

110.    That CWC furnished information to EXP and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and TU of the disputes.

111.    That CWC failed to update the account information and mark the account as disputed on the updated 01/16/2023 credit report after Plaintiff disputed the account on 11/14/2023 and was given notice of such by EXP and TU.

112.    In the alternative, if CWC properly updated the account information and marked the account as disputed with EXP and TU after receiving notification of disputes from Plaintiff, then EXP and TU failed to update the account information and mark the account as disputed on the updated 01/16/2023 credit report.

113.    That CWC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and TU.

114.    Alternatively, EXP and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CWC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

115.    All of ICS and CWC's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

116.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

117.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the ICS, CWC, and/or EXP and TU.

118.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by ICS, CWC, and/or EXP and TU.

119.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by ICS, CWC, and/or EXP and TU.

120.    Plaintiff has suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

121.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of ICS, CWC, and/or EXP and TU.

122.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

## Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

123.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

124.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

125.    That because Plaintiff disputed the debt, ICS and CWC, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify

[credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

126.    ICS and CWC used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

127.    ICS and CWC's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

128.    ICS and CWC violated the Plaintiff's right not to be the target of misleading debt collection communications.

129.    ICS and CWC violated the Plaintiff's right to a truthful and fair debt collection process.

130.    ICS and CWC's communications with Plaintiff were deceptive and misleading.

131.    ICS and CWC used unfair and unconscionable means to attempt to collect the alleged debt.

132.    ICS and CWC's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to ICS and CWC's collection efforts.

133.    ICS and CWC's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

134.    ICS and CWC's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

135.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

136.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of ICS and CWC's conduct.

137.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. ICS and CWC's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

138.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

139.    Defendants ICS and CWC's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jessica Moore, prays that this Court:

      A.      Declare that ICS and CWC's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Jessica Moore, and against ICS and CWC for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

**Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse**

140.      Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

141.      Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

142.      ICS and CWC's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

143.      ICS and CWC attempted to coerce Plaintiff into paying alleged debts she otherwise would not have paid by submitting false and inaccurate information to her credit report.

144.      ICS and CWC could have no other purpose in doing this except to harm Plaintiff's reputation and deprive her of her ability to receive any type of credit line unless he paid the alleged debts.

145.      Defendants ICS and CWC's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jessica Moore, prays that this Court:

      A.      Declare that ICS and CWC's debt collection actions violate the FDCPA;

B.      Enter judgment in favor of Plaintiff Jessica Moore, and against ICS and CWC for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.      Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

146.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

147.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

148.    ICS and CWC attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

149.    ICS and CWC used unfair and unconscionable means to attempt to collect the alleged debts.

150.    ICS and CWC's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jessica Moore, prays that this Court:

A.      Declare that ICS and CWC's debt collection actions violate the FDCPA;

B.      Enter judgment in favor of Plaintiff Jessica Moore, and against ICS and CWC, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.      Grant other such further relief as deemed just and proper.

## Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

151.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

152.    EXP and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

153.    As a result of this conduct, action and inaction of EXP and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

154.    EXP and TU's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

155.    The Plaintiff is entitled to recovery costs and attorney's fees from EXP and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jessica Moore, prays that this Court:

A.    Declare that EXP and TU's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Jessica Moore, and against EXP and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Jessica Moore, and against EXP and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

156.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

18

157.    Defendant EXP and TU violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to EXP and TU; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

158.    As a result of this conduct, action and inaction of EXP and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

159.    EXP and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

160.    The Plaintiff is entitled to recovery costs and attorney's fees from EXP and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jessica Moore prays that this Court:

A.    Declare that EXP and TU's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Jessica Moore, and against EXP and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Jessica Moore, and against EXP and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

### Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

161.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

162.     Defendants ICS and CWC violated 15 U.S.C. § 1681s-2(b) by continuing to report the ICS and CWC  representations within Plaintiff's credit file with EXP and TU  without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the ICS and CWC representations; by failing to review all relevant information regarding same; by failing to accurately respond to ICS and CWC; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the ICS and CWC  representations to the consumer reporting agencies.

163.     As a result of this conduct, action and inaction of ICS and CWC, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

164.     Defendants ICS and CWC's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

165.     Plaintiff is entitled to recover costs and attorney's fees from ICS and CWC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jessica Moore, prays that this Court:

A.     Declare that ICS and CWC's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Jessica Moore, and against ICS and CWC for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Jessica Moore, and against ICS and CWC, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

### JURY DEMAND

166.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: December 21, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:    _/s/ Joel Halvorsen_____

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com